NOTICE

Decision filed 07/31/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 260388-U

NO. 5-26-0388

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jefferson County. |
| | ) | |
| v. | ) | No. 26-CF-132 |
| | ) | |
| CLINTON E. MAXEY, | ) | Honorable |
| | ) | Jerry E. Crisel, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BOLLINGER delivered the judgment of the court.
Justices McHaney and Sholar concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The circuit court's orders granting the State's verified petition to deny pretrial release and denying defendant's motion for relief are affirmed.

¶ 2     Defendant, Clinton E. Maxey, appeals the Jefferson County circuit court's April 21, 2026, order granting the State's petition to deny pretrial release, and the April 29, 2026, order denying his motion for relief and immediate release. For the following reasons, we affirm.

¶ 3                                  I. BACKGROUND

¶ 4     On April 20, 2026, defendant was charged by information with indecent solicitation of a child and traveling to meet a child, both Class 3 felonies. 720 ILCS 5/11-6(a), 11-26(a) (West 2024). Defendant was indicted on these charges on April 23, 2026. The State filed a verified petition to deny defendant pretrial release, alleging that defendant was charged with a detainable

1

offense and that he posed a real and present threat to the safety of any person or persons or the community. 725 ILCS 5/110-6.1(a)(4) (West 2024).

¶ 5    The matter proceeded to a detention hearing on April 21, 2026. The State proceeded by proffer, stating that defendant was charged with a detainable offense under both indecent solicitation of a child and traveling to meet a child. On April 18, 2026, Detective Osborn of the Mount Vernon Police Department (MVPD) responded to an investigation involving a man later identified as defendant. Osborn spoke with Garrett Gross, Haley Wright, and Wyatt Eugene Pinnon in the lobby of the MVPD. They were part of a civil operation group that exposed child predators through decoys. Wright informed Osborn that she was the decoy involved in the present case. On December 16, 2025, defendant began messaging the decoy account on an application called "Skout." Wright told Osborn that she did not ever initiate any sexual conversation or suggest a place to meet. Wright messaged defendant stating that she had something to tell him, to which he responded, "Unless you have a dick, I am D-T-F," which the State clarified was an acronym for "down to f**k." Wright told defendant that she was 14 years old and that she lied about her age on her profile.

¶ 6    During their conversations, defendant made numerous sexually suggestive comments to the decoy profile. When the suggestion of meeting came up, defendant stated, "I'm not going to go there until I know this isn't an ISP [Illinois State Police] sting for pedos," referring to pedophiles. Defendant suggested that Wright send him a message "indicating that his stepson had gotten involved in a fight at 618 Axe here in Jefferson County, specifically, Mt. Vernon, in order to get him out of the house." After defendant's suggestion on a location to meet, Wright, Gross, and Pinnon provided all the screenshots of the messages to the MVPD, as they did not want to confront defendant directly.

¶ 7    The State entered into evidence some of the screenshots, as the data on defendant's cell phone was still being collected after executing a search warrant on it. The screenshots included the messages from the Skout app, as well as the "Signal" messaging app with a profile associated with defendant's phone number. The messages showed defendant communicating with an individual he believed to be a 14-year-old girl, and the State clarified that the statute does not require the individual to be a minor, but whether a defendant believed the individual to be a minor at the time the messages were sent. The messages included in the record clearly show that defendant intended to meet with a minor to engage in sexual conduct, including asking the decoy account if she was on birth control, if she would be willing to bring the "mornin[g] after pill" (commonly known as "Plan B"), and telling her what time and where to meet him. The State also presented a message from defendant, asking the decoy account if she was "into" cocaine, methamphetamine, heroin, or crack. Further, the State asserted that the content of the messages suggested that the decoy account would not have been the first underage person defendant engaged in sexual conduct with.

¶ 8    The State proffered that at the time of the offense, defendant was on conditional discharge for the offense of reckless driving, which was amended from a driving under the influence (DUI) charge. The State asked for defendant to be detained, as he posed a threat to the children of the community.

¶ 9    Defense counsel proffered that defendant was 45 years old and resided in Mount Vernon with his wife. He graduated from high school and had some college education. He had significant family ties and lived in Jefferson County for his entire life. He was employed as an electrician and was the sole provider for his family. He was not on probation, bond, pretrial release, parole, or work release. His criminal history included 2024, 2012, and 2002 DUI convictions, a misdemeanor

theft, and two felony convictions from 2001. Following defendant's arrest, his wife had a heart attack and spent three days in the hospital.

¶ 10    Defense counsel proffered that there were no injuries or harm to anyone, no drugs were used, and there "was no real victim" in this case. Defendant scored in the lowest level of recidivism on the Virginia Pretrial Risk Assessment Instrument. Defense counsel asked for defendant's release on home confinement with electronic monitoring with permission to work.

¶ 11    The State responded, asserting that there was no victim because it was a decoy account instead of an "actual person who could have been subjected to the overtures of" defendant. The State informed the court that one message not included in the exhibits was a picture defendant had sent to the decoy account of his genitals. The State asserted that no conditions would prevent defendant from presenting a threat to the community. There was no way to guarantee that defendant would not have access to electronics to solicit a child in this type of manner again. The State asked that defendant be detained.

¶ 12    The circuit court said that in defendant's favor, it considered his age, ties to the community including his family, his education, and employment. The court stated that defendant was on conditional discharge when the offense occurred, which ordered defendant not to violate any laws. The conversations occurred from December 16, 2025, to April 17, 2026, which was a "lengthy period of time for this kind of behavior." From the messages presented by the State, defendant was aware that his behavior was illegal and proceeded anyway. Defendant also had four prior convictions, including two misdemeanors and two felonies. The court said, "This behavior is very troubling. The internet is ubiquitous. It's everywhere. Cellphones are everywhere. It doesn't take a lot of sophistication to be able to do something like this." Further, defendant's wife suffered a heart attack, which could have happened from defendant's behavior in this case. The court also

4

considered that a minor was not actually accosted or assaulted by this offense, but the statute does not require that and was meant to discover the offenses before they occurred.

¶ 13 The circuit court said that this behavior was a danger to the community, and there was not any condition or combination of conditions that would adequately protect the community and ensure that defendant would follow the orders of a conditional release. The circuit court granted the State's petition to detain defendant. The circuit court entered a written order, finding that defendant posed a real and present threat and no conditions would assure the safety of the minor children of the community.

¶ 14 Defense counsel filed a motion for relief and immediate release on April 24, 2026. The motion alleged that circuit court erred in granting the State's petition because the State failed to meet its burden of proving by clear and convincing evidence that the proof was evident or presumption great that defendant committed a detainable offense, posed a real and present threat to the safety of any person, persons, or the community, and that no condition or combination of conditions could mitigate the threat. Further, the circuit court failed to fully consider defendant's ties to the community, his willingness to abide by any terms of pretrial release, that he "led a law-abiding life for a substantial period of time before the commission of the present alleged offense," his employment opportunities, that no weapon was used in the commission of the alleged offense, and his wife's health condition.

¶ 15 The matter proceeded to a hearing on the motion on April 29, 2026. Defense counsel provided the same factual proffer as the initial detention hearing. Defendant's wife also appeared at the hearing to support him. Defense counsel again stated that defendant scored low for recidivism, there was no injury or harm to anyone, and there was no victim. Further, defendant was not a danger to any person, persons, or the community. Defense counsel asked for defendant's

5

release on home confinement with electronic monitoring, an order for no usage of the internet, and a work release if his employer would permit him to go back to work. The State provided the same factual proffer as it did during the initial detention hearing. The State said that this was a detainable offense under the statute, and defendant's pretrial release posed a real and present threat to the safety of any person or persons or the community. The State noted that it was "very fortunate" there was no victim because of the decoy, if not there would have been a 14-year-old victim meeting with defendant. Further, the statute does not require there to be an actual underage person, but just that defendant believed the individual to be a minor. No conditions would mitigate the threat he posed to the safety of the community, and the State asked for continued detention of defendant.

¶ 16 Defense counsel responded, stating that when defendant was arrested, his wife was with him and his family needed him for income. Defendant was arrested at a car wash, which the State clarified was next door to 618 Axe, where defendant was supposed to meet a minor.

¶ 17 The circuit court recounted the same factors it considered during the initial detention hearing, including defendant's family and community ties, education, employment, and low recidivism rate score in his favor. However, defendant did have a criminal record and was on conditional discharge when he was arrested, which required defendant to not violate the law. The State also presented a "strong case" with evidence, and the nature of the offense was "very troubling in this community." The circuit court denied the motion for relief. Defendant appealed.

¶ 18                                  II. ANALYSIS

¶ 19 Pretrial release, including the conditions related thereto, is governed by article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2024)), as amended by Public Act 101-652 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act. A

6

defendant's pretrial release may be denied only in certain statutorily limited situations. 725 ILCS 5/110-6.1 (West 2024). Upon filing a timely, verified petition requesting denial of pretrial release, the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that the defendant has committed a qualifying offense, that the defendant's pretrial release poses a real and present threat to the safety of any person or the community or poses a flight risk, and that less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution. *Id.* §§ 110-6.1(e), (f). The State or the defendant may present evidence to the circuit court by way of proffer based upon reliable information. *Id.* § 110-6.1(f)(2). The circuit court may order a defendant detained pending trial if the defendant is charged with a qualifying offense and the circuit court concludes the defendant poses a real and present threat to the safety of any person or the community (*id.* § 110-6.1(a)(1)-(7)) or there is a high likelihood of willful flight to avoid prosecution (*id.* § 110-6.1(a)(8)).

¶ 20    Where the parties to a pretrial detention hearing proceed solely by proffer or submission of documentary evidence, this court stands in the same position as the circuit court and may conduct its own independent review of the proffered evidence, thus reviewing the record *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 54. In the present matter, the parties proceeded solely by proffer, so we will employ a *de novo* review.

¶ 21    The circuit court is provided a nonexhaustive list of factors it should consider when determining whether a defendant poses a real and present threat to the safety of any individual(s) or the community. 725 ILCS 5/110-6.1(g) (West 2024). Those factors include (1) the nature and circumstances of the offenses charged, including whether they are crimes of violence, involve a weapon, or a sex offense; (2) whether the defendant's prior criminal history indicates "violent,

7

abusive, or assaultive behavior, or lack of such behavior"; (3) the identity of any individual to whose safety the defendant may pose a threat and the nature of any such threat; (4) the defendant's age and physical condition; (5) the age and physical condition of the victim or complaining witness; (6) whether the defendant possesses or has access to any weapons; (7) whether the defendant was on probation, parole, or mandatory supervised release when arrested on the underlying charges or any other offense; and (8) any other factor that has a reasonable bearing on the defendant's propensity for violent, abusive, or assaultive behavior. *Id.* § 110-6.1(g)(1)-(9). No one factor is determinative, and the court must base its decision on an individualized assessment. *People v. Atterberry*, 2023 IL App (4th) 231028, ¶ 15 (citing 725 ILCS 5/110-6.1(f)(7) (West 2022)).

¶ 22    Once a court determines that the defendant poses a threat to the safety of any individual or the community, the circuit court must determine whether the State has met its burden of proving by clear and convincing evidence what pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." 725 ILCS 5/110-5(a) (West 2024). In reaching its determination, the circuit court must consider (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant;[1] (4) the nature and seriousness of the specific, real, and present threat to any person that would be posed by the defendant's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice

---

[1]The defendant's history and characteristics include: "the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past relating to drug or alcohol abuse, conduct, *** criminal history, and record concerning appearance at court proceedings," as well as "whether, at the time of the current offense or arrest, the defendant was on probation, parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal law, or the law of this or any other state." *Id.* § 110-5(a)(3)(A), (B).

process. *Id.* § 110-5(a)(1)-(5). The Code lists no singular factor as dispositive. See *id.* § 110-5(a). The nature and circumstances of the underlying offense is "just one factor to consider in determining whether the threat posed can be mitigated by conditions of release." *People v. Lopez*, 2025 IL App (2d) 240709, ¶ 19.

¶ 23   On appeal, the Office of the State Appellate Defender (OSAD) was appointed as appellate counsel. Defendant was permitted, but not required, to file a memorandum on appeal. OSAD did not file a memorandum or a notice in lieu of a memorandum pursuant to Rule 604(h)(7). "Issues raised in the motion for relief are before the appellate court regardless of whether the optional memorandum is filed." Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024). Therefore, our review is limited to the issues raised in the motion for relief.

¶ 24   The State argues on appeal that defendant waived the issue of whether the State proved by clear and convincing evidence that the proof was evident or presumption great that he committed a detainable offense. We agree. Defendant's motion for relief makes conclusory statements about this issue in that the State failed to prove it. However, the motion does not contain any fact specific argument that could be interpreted to apply to this element. Instead, it only includes factors which could have been considered as to his real and present threat, and whether conditions could mitigate said threat.

¶ 25   "[D]efendants must endeavor to present a more complete analysis of the issues in their motions for relief or, as the rule allows, file a supplemental memorandum in support of the appeal rather than relying on the appellate court to do the work for them." *People v. Post*, 2025 IL App (4th) 250598, ¶ 23. Failure to comply with Rule 604(h)(7) by presenting arguments without "sufficient detail to enable meaningful appellate review, including the contentions of the appellant and the reasons therefore and citations of the record and any relevant authorities," constitutes

waiver of the issue on appeal. Ill. S. Ct. R. 604(h)(7), (2) (eff. Apr. 15, 2024). As such, we find this issue waived.

¶ 26　As to whether defendant posed a real and present threat, only one factor would be applicable, that being that no weapon was alleged to have been used in the offense. See 725 ILCS 5/110-6.1(g)(1) (West 2024) (the court may consider the nature and circumstances of the offense charged, including whether it involved a weapon). We thus evaluate if defendant posed a real and present threat.

¶ 27　We have conducted our own independent review of the proffered evidence and the relevant factors. First, the nature and circumstances of the offense charged against defendant involved a sex offense. *Id.* While defendant argued that there was no real "victim," the statute does not require there to be. See 720 ILCS 5/11-6(a) (West 2024) ("A person *** commits indecent solicitation of a child if the person *** knowingly solicits a child or *one whom he or she believes to be a child* to perform an act of sexual penetration or sexual conduct." (emphasis added)); see also *id.* § 11-26(a) ("A person commits traveling to meet a child when he or she travels any distance *** for the purpose of engaging in any sex offense *** or to otherwise engage in other unlawful sexual conduct with a child or *with another person believed by the person to be a child* *** for such purpose."). (Emphasis added.) Defendant engaged in what he knew to be illegal conduct, as he expressed concern that the encounter might be an "ISP sting for pedos." Defendant sent multiple sexually explicit messages to a person he believed to be a 14-year-old girl, as well as a picture of his genitals. Defendant's behavior would pose a risk to any children within the community. 725 ILCS 5/110-6.1(g)(3) (West 2024). Defendant was also on conditional discharge, which required him not to violate any laws. *Id.* § 110-6.1(g)(9). Given these factors, the State proved by clear and convincing evidence that defendant posed a real and present threat to the safety of the community.

¶ 28    Defendant's motion for relief argued that the trial court failed to fully consider his ties to the community, willingness to abide by any terms of pretrial release, his "law-abiding life for a substantial period of time," his employment opportunities, and his wife's health condition. These factors could be applicable to whether or not the State has met its burden of proving by clear and convincing evidence what pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." *Id*. § 110-5(a). We will thus review whether any conditions would mitigate defendant's real and present threat.

¶ 29    We find the following factors support the conclusion that no condition or combination of conditions could mitigate the real and present threat posed by defendant. First, the nature and circumstances of the offenses charged. The offenses were sex offenses, Class 3 felonies, and involved concerning behavior toward a person whom defendant believed to be a 14-year-old girl, as described above. *Id.* § 110-5(a)(1). Next, the weight of the evidence against defendant included a proffer of the police report and screenshots of messages from defendant entered as exhibits. *Id.* § 110-5(a)(2). The circuit court noted that the State had a "strong" case. Defendant's criminal history also included four convictions, and he was on conditional discharge at the time of his arrest. *Id.* § 110-5(a)(3). The circuit court stated that part of conditional discharge included an order for defendant not to violate any laws, and defendant's messages showed that he knew his conduct was illegal but he proceeded anyway. Defendant's offenses were initiated fully online, and we agree with the circuit court that no conditions exist that would properly limit defendant's internet usage. An order for no internet use would not include any way to conduct real-time monitoring of defendant's online presence. Home confinement would not mitigate defendant's risk either, as the

11

offense of solicitation of a minor could occur within his home. Accordingly, based on our independent review, we agree with the circuit court that no condition or combination of conditions would mitigate the threat posed by defendant.

¶ 30                                III. CONCLUSION

¶ 31     Based on the foregoing reasons, we affirm the trial court's orders of April 21, 2026, and April 29, 2026.

¶ 32     Affirmed.